816 So.2d 748 (2002)
K.G.M., a child, Appellant,
v.
STATE of Florida, Appellee.
No. 4D00-3522.
District Court of Appeal of Florida, Fourth District.
May 8, 2002.
*750 Carey Haughwout, Public Defender, and Ellen Griffin, Assistant Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Kristine Keaton, Assistant Attorney General, Fort Lauderdale, for appellee.
GUNTHER, J.
K.G.M. (KGM), a child, appeals his adjudication of delinquency and detention order imposed after KGM pled no contest to possession of more than twenty grams of marijuana and possession of drug paraphernalia. KGM's plea was entered after the trial court denied his motion to suppress evidence discovered during a search of KGM's car. At sentencing, the Department of Juvenile Justice (DJJ) recommended commitment to a level-four program. Although the State argued for commitment to a level-eight program, the trial court judge sentenced KGM to commitment to a level-six program. The trial court judge entered no specific findings of *751 fact for his departure from the DJJ recommendation.
On April 15, 2000, KGM was stopped by the Sebastian Police Department for operating a vehicle with a cracked windshield. While conducting the initial traffic stop, the arresting officer observed what he believed, based upon his two-years of law enforcement experience combined with extensive narcotics training, to be a marijuana seed in a crevice of the cushion of the back seat of KGM's vehicle. The officer made this observation with the aid of a flashlight from a distance of approximately two to three feet.
While completing a written warning to be issued to KGM, the officer requested the assistance of a narcotics-detection canine from the nearby county sheriff's office. The narcotics detection canine arrived approximately 33 minutes after the officer called, and a total of approximately 40 minutes after the initial stop occurred. Pursuant to an external search the canine alerted to the presence of narcotics and the officer conducted a search of the vehicle. Marijuana was found and KGM was arrested for possession of more than twenty grams of marijuana and possession of drug paraphernalia.
KGM argues two points. First, his detention while awaiting the arrival of the canine was unsupported by reasonable articulable suspicion. Therefore, because he was detained longer than necessary to prepare the written warning, it was unreasonably long under the holding of Cresswell v. State, 564 So.2d 480 (Fla.1990). Second, the trial court judge failed to articulate a reason supported by substantial competent evidence for departure from the DJJ's sentencing recommendation; therefore, KGM's sentence to a level-six program was reversible error.
The State has conceded error on KGM's second point, and therefore, we reverse on that issue for further proceedings in accordance with SLK v. State, 776 So.2d 1062, 1064 (Fla. 4th DCA 2001) (holding in part that any departure from sentencing recommendations submitted by DJJ must be supported by specific findings of fact supported by substantial competent evidence in the record).
We now turn to KGM's first claimed error. It is helpful in this case to first reiterate the standard of review with which we examine this question.
A trial court's ruling on a motion to suppress evidence is clothed with the presumption of correctness. See Murray v. State, 692 So.2d 157, 159 (Fla.1997). The appellate court must interpret the evidence and all inferences drawn therefrom in a manner most favorable to sustaining the trial court's ruling. See id. A trial court's ruling on a motion to suppress will not be overturned on appeal if competent substantial evidence exists which would support the decision. See Caso v. State, 524 So.2d 422, 424 (Fla.1988). "[W]e defer to the factual findings of the trial judge that are supported by competent substantial evidence." Harris v. State, 761 So.2d 1186, 1188 (Fla. 4th DCA 2000).
It is therefore clear that the trial court judge's determination of the historical facts and the inferences drawn therefrom, if supported by credible evidence, must be given deference. See Ornelas v. United States, 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996).
"Once the historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the [relevant] statutory [or constitutional] standard ... to put it another way, whether the rule of law as applied to the established facts is or is not violated." Id. at 696-97, 116 S.Ct. 1657 *752 (quoting Pullman-Standard v. Swint, 456 U.S. 273, 289, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982)). This court will "consider for ourselves whether as a matter of law those facts amount to reasonable suspicion or probable cause." Harris, 761 So.2d at 1188.
In the instant case, the historical facts were established based upon the arresting officer's testimony. The officer testified that, after stopping KGM, he observed a small seed on the back seat of KGM's vehicle. Although not completely positive the seed was that of the marijuana plant, he testified that his experience and training made him "pretty positive" that the seed was in fact a marijuana seed. The officer was subject to thorough cross-examination and, although he admitted that the seed "could have been a seed of some other species," maintained his belief that it was in fact that of the marijuana plant.
Additionally, the officer testified that he had served as a law enforcement officer for two years, during which time he had frequently observed marijuana buds, stems, leaves, seeds and marijuana in tar and hashish form. Beyond his practical experience, the officer testified to numerous hours of basic and advanced training in the identification of narcotics, including marijuana and all its component and derivative parts, and in the investigation of narcotics and narcotics related offenses.
As the supreme court recently explained, "[a]ppellate courts cannot use their review powers in such cases as a mechanism for reevaluating conflicting testimony and exerting covert control over the factual findings.... [A] suppression ruling comes to the reviewing court clad in a presumption of correctness as to all factbased issues." Glatzmayer v. State, 789 So.2d 297, 301 (Fla.2001).
The inescapable fact of the matter is, the trial judge assessed the officer's testimony and demeanor, and found his testimony credible. The evidence adduced, in the form of testimony, if believed, supports the trial court judge's determination of the historical facts. As an appellate court, we are bound by the trial court's determination that the officer observed a single marijuana seed on the backseat cushion of KGM's car. See Ornelas, 517 U.S. at 699, 116 S.Ct. 1657.
Having established the historical facts we now turn to the question of whether these facts, as applied to the rule of law, satisfy the standard. See Ornelas, 517 U.S. at 696, 116 S.Ct. 1657.
It is important to note at the outset, the distinction between the level of suspicion necessary for an investigatory detention, and for a search. Because the instant case implicates an investigatory detention, the question before this court must be narrowly defined as one of reasonable suspicion as opposed to probable cause.
It is not disputed that the initial stop was valid. See Cresswell, 564 So.2d at 481. However, in order to detain KGM beyond the time necessary to issue a citation or warning, the officer must have "reasonable suspicion based upon articulable facts that criminal activity may be afoot." Id. The circumstances must be "seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement." Id. at 482. When reviewing the factors involved in determining whether reasonable suspicion existed, the totality of the circumstances must be considered and "include: the time of day; the appearance and behavior of the suspect; the appearance and manner of operation of any vehicle involved; and anything incongruous or unusual in the situation as interpreted in light of the officer's knowledge." Grant v. State, 718 So.2d 238, 239 (Fla. 2d DCA *753 1998). "A police officer may draw inferences based upon his own experience...." Ornelas, 517 U.S. at 700, 116 S.Ct. 1657. "A police officer views the facts through the lens of his police experience and expertise. The background facts provide a context for the historical facts, and when seen together yield inferences that deserve deference." Id. These "background facts, though rarely the subject of explicit findings, inform the judge's assessment of the historical facts." Id.
To justify temporary detention of a person, there must be a "founded" suspicion in the mind of the police officer that the person has committed, is committing, or is about to commit a crime. A "founded" suspicion is one which has some factual foundation in the circumstances observed by she [sic] officer when those circumstances are interpreted in light of the officer's knowledge. Mere suspicion... is ... random selection, sheer guesswork, or a hunch; it has no objective justification.

Elliott v. State, 597 So.2d 916, 917-18 (Fla. 4th DCA 1992) (emphasis added). "Both the founded suspicion standard and the probable cause standard require the officer to interpret a factual foundation in light of the officer's knowledge and experience. The difference between the two lies in the degree of probability." Id. at 918. Even where inferences are based upon a "succession of superficially innocent events [that] proceeded to the point where a prudent man could say to himself that an innocent course of conduct was ... less likely than a criminal one." State v. Isaacs, 578 So.2d 523, 523 (Fla. 4th DCA 1991).
In the case at bar, the officer's particularized training and experience gave him a founded suspicion that the seed he observed on the back seat of the vehicle was a marijuana seed. Although, as KGM argues, the seed on the back seat could have been the seed of another species of plant, the officer's training led him to believe otherwise. This was more than a mere "hunch" as characterized by KGM. It was a reasonable belief, based upon articulable facts. The officer had "objective justification" for his belief that criminal conduct was afoot. See Elliott, 597 So.2d at 918. It was not a hunch or mere guesswork.
Courts have been inclined to find a lack of reasonable suspicion where the circumstances were a piling on of inferences derived from otherwise legal conduct. See Peabody v. State, 556 So.2d 826 (Fla. 2d DCA 1990); Mosley v. State, 519 So.2d 58 (Fla. 2d DCA 1988); King v. State, 521 So.2d 334 (Fla. 4th DCA 1988); State v. Hoover, 520 So.2d 696 (Fla. 4th DCA 1988); State v. Isaacs, 578 So.2d 523 (Fla. 4th DCA 1991); but see Murphy v. State, 512 So.2d 1006 (Fla. 4th DCA 1987); Ewen v. State, 518 So.2d 1285 (Fla. 4th DCA 1988). In the instant case however, the possession of a marijuana seed is arguably not innocent conduct.
Marijuana seeds are the precursors to the marijuana plant. They are likewise, a common by-product of the possession of marijuana. It is therefore a reasonable inference from the existence of a marijuana seed, that marijuana is or has been in close proximity. Possession of marijuana is criminal conduct, therefore the reasonable inference is that criminal activity is afoot.
Although these facts appear to present a question of first impression in Florida, several other jurisdictions have had occasion to address it.
In People v. Schultz, 263 Cal.App.2d 110, 69 Cal.Rptr. 293 (1968), the fourth appellate district of California found that an officer, "upon observing a marijuana seed in the automobile in which the defendants *754 were riding, had reason to believe other marijuana might be located in the automobile." Using this statement the court determined that a single marijuana seed, given the officer's training and experience, constituted probable cause to search the vehicle. See id. at 295.
Likewise, an Ohio court has ruled that a single marijuana seed constitutes reasonable suspicion to detain the occupants of a vehicle until a narcotics canine could sniff the car. See State v. Zimmerman, C.A. No. 2859-M, 1999 WL 195605 at *4 (9th Dist. Mar. 31, 1999)[1] (holding that one marijuana seed supports a reasonable suspicion that drugs were present).
In sum, the trial court's determination of the historical facts are supported by the evidence. Given that, we believe that it is a reasonable inference from the existence of the marijuana seed on the facts of this case, that marijuana may be present. We further find that this inference is sufficient to support a finding of reasonable suspicion to detain the defendants until the arrival of a canine narcotics officer some thirty minutes later.
AFFIRMED IN PART, REVERSED IN PART.
POLEN, C.J., and WARNER, J., concur.
NOTES
[1] Opinions issued prior to May 1, 2002, not published in the Ohio Official Reports, are of persuasive authority. See Rule 4 Ohio R of Court, (2000).